# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

CHARON L. BROWN,

    Plaintiff,

v.

CLARK COUNTY DETENTION CENTER, *et al.*,

    Defendants.

Case No. 2:15-cv-01670-APG-NJK

**ORDER GRANTING MOTIONS FOR RECONSIDERATION AND TO AMEND**

(ECF Nos. 122, 127)

    Plaintiff Charon Brown brought suit against defendant NaphCare, Inc. based on NaphCare's alleged deliberate indifference to his medical needs while he was a pretrial detainee at the Clark County Detention Center (CCDC).[1] ECF No. 1-2. He alleged that as a result of an assault by another inmate and correctional officers' brutality, he suffered injured shoulders for which NaphCare refused to treat him despite his many complaints of pain. *Id.* at 12. He also alleged that in August 2015, a medical provider told him that he needed an MRI and surgery but that it was not approved. *Id.* Brown originally was proceeding pro se, so his complaint was screened and his deliberate indifference claim was allowed to proceed. ECF No. 3.

    NaphCare filed a motion to dismiss and Brown did not respond to it. ECF No. 12. I therefore granted the motion as unopposed under Local Rule 7-2(d). ECF No. 22. Brown moved for reconsideration of that decision, but I denied his motion. ECF Nos. 26, 66. Brown again moved for reconsideration. ECF No. 77. Before I ruled on that motion, Magistrate Judge Koppe appointed pro bono counsel for Brown. ECF No. 96. Brown withdrew his motion for reconsideration so that he could prepare a proper motion through counsel. ECF No. 98.

    Brown now moves for reconsideration of the order dismissing NaphCare. He also moves to amend the complaint to clarify the original allegations and to add allegations related to conduct post-dating the original complaint. I grant both motions.

---

[1] Brown also sued other defendants who since have been dismissed. ECF No. 135.

## I. MOTION FOR RECONSIDERATION

Brown moves for relief under Federal Rule of Civil Procedure 60(b). However, my order dismissing NaphCare was not a final order within Rule 60(b)'s meaning because it did not dispose of the case as to all claims and parties and I did not enter a Rule 54(b) certification. Consequently, I consider Brown's motion under the standard for reconsideration of an interlocutory order.

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* LR 59-1(a). A district court may also reconsider its decision if "other, highly unusual, circumstances" warrant it. *Sch. Dist. No. 1J, Multnomah Cty., Or.*, 5 F.3d at 1263.

Brown argues the order dismissing NaphCare should be set aside because he did not receive it and so could not timely respond to it. He also argues that after counsel was appointed, he received new evidence, such as NaphCare's policies and procedures and documentation about NaphCare's denial of an MRI on Brown's shoulder that the treating medical provider had requested. Brown argues he could not have obtained these documents as a pro se litigant, as demonstrated by how difficult it was for his counsel to obtain them. He also argues he has viable claims against NaphCare that he should be allowed to pursue and that NaphCare's original motion to dismiss would have been denied on the merits if he had been able to oppose it.

NaphCare responds that there is no newly discovered evidence supporting reconsideration because Brown could have previously obtained the information he now claims is newly discovered. NaphCare also contends I did not clearly err when granting the prior dismissal

because Brown failed to respond to the motion and although Brown claimed he did not receive the motion, he did not deny receiving NaphCare's notice of non-opposition.

I grant the motion to reconsider and set aside the dismissal. Brown swears under oath that he never saw the motion to dismiss until his later-appointed counsel provided it to him in August 2017. ECF No. 125-3. Further, Brown has presented evidence of post-complaint events supporting a claim against NaphCare, and he has presented evidence that it is unlikely he could have obtained evidence supporting his factual allegations prior to the dismissal. *See* ECF Nos. 108; 122-1; 122-4; 125-1; 125-2. Brown's counsel could not obtain NaphCare's policies and procedures without entering into a protective order. ECF No. 109. And NaphCare's own counsel did not obtain the document showing NaphCare denied the treating doctor's request for an MRI on Brown's shoulder until the day before NaphCare's Rule 30(b)(6) deposition in July 2017. ECF Nos. 122-2; 125-2.

Finally, the policy of favoring resolution of disputes on their merits as opposed to technical failures weighs in favor of reconsideration. *See Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Public policy favors disposition of cases on the merits."). My prior order dismissing NaphCare was based solely on Brown's failure to respond. Brown since has presented arguments on the merits of NaphCare's motion, to which NaphCare did not respond. *Compare* ECF No. 122 at 7-13 *with* ECF No. 124. Consequently, it appears that NaphCare concedes that its motion would not have succeeded if addressed on the merits. I therefore grant Brown's motion for reconsideration and I vacate my order dismissing NaphCare.

**II. MOTION TO AMEND**

Brown moves for leave to amend beyond the deadline for amending the pleadings in the scheduling order because he did not and could not have discovered evidence supporting some of his allegations until after the deadline to amend pleadings had expired. Brown also contends that there is no evidence of undue delay, bad faith, or prejudice to NaphCare, and he argues amendment would not be futile.

1  NaphCare responds that Brown has failed to show good cause to amend the scheduling order because he was able to present his claims and could have obtained the new evidence during discovery before the deadline expired. NaphCare contends the mere fact that Brown was proceeding pro se at the time does not mean he could not have made the allegations in the amended complaint or conducted discovery to uncover the evidence now being relied on for amendment. NaphCare contends amendment would be futile because Brown has alleged only a difference of medical opinion, not deliberate indifference; Brown has not alleged facts showing a policy or practice of denying care based on cost considerations; and NaphCare provided Brown with regular and adequate care.

**A. Amending the Scheduling Order**

Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending the pleadings, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609. Although Rule 16 does not require a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment. *Coleman*, 232 F.3d at 1295. Whether to modify the scheduling order's amendment deadline lies within my discretion. *United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007).

Brown has demonstrated good cause to amend the scheduling order's June 26, 2016 deadline. ECF No. 16 at 1. Brown did not obtain evidence supporting some of his allegations until after the deadline to amend had passed. Although NaphCare argues Brown could have obtained that material before the deadline passed, NaphCare's initial disclosures did not contain the record of the MRI denial or NaphCare's policies and procedures. NaphCare did not produce its policies and procedures until May 23, 2017, after the parties had entered into a stipulated protective order, and NaphCare did not produce the MRI denial until July 2017. ECF Nos. 127-1

at 2; 127-3; 127-7. NaphCare has not identified any prejudice from allowing amendment beyond the scheduling order's deadline. I therefore grant leave to move to amend beyond the deadline in the scheduling order.

**B. Amending the Complaint**

Generally, a plaintiff may amend its complaint "once as a matter of course within . . . 21 days after serving it," or within 21 days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). I consider five factors when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint. *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Whether to grant leave to amend lies within my discretion. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

I have already addressed NaphCare's arguments that Brown could have brought his claims sooner, and I find no undue delay. There is no evidence of bad faith, prejudice to NaphCare, or previous amendments that failed to correct deficiencies. However, NaphCare argues amendment would be futile.

The proposed amended complaint alleges that on March 28, 2015, Brown's back and shoulders were injured in an altercation with another inmate at CCDC. ECF No. 127-2 at 3. On April 16, Brown reported "excruciating pain" in his shoulders since the incident. *Id.* Brown followed up on April 25, stating he had not been seen by a doctor. *Id.*

Brown alleges that he still had not been seen by a doctor when on May 8, two corrections officers slammed him on the concrete and he landed on his right shoulder and suffered a bump around his right eye. *Id.* A NaphCare nurse was called to look at the bump near his eye, and she

gave him an ice pack for swelling. *Id.* at 4. The nurse allegedly did not follow NaphCare policies requiring a complete physical exam after the use-of-force incident. *Id.*

The next day, another nurse saw Brown, gave him a cold compress, and told him to submit a kite if he had ongoing medical issues. *Id.* Later that same day, Brown submitted two kites complaining he was in excruciating pain and needed x-rays or an MRI for his back, neck, and shoulders. *Id.* Brown was told he could obtain Tylenol from the nurses or buy Motrin from the canteen. *Id.*

On May 11, Brown was seen by a physician's assistant who noted Brown had a facial contusion and shoulder strains. *Id.* She prescribed Naprosyn and Robaxin. *Id.* A few days later, Brown again complained of pain and offered to pay for the x-rays out of his prison account. *Id.* at 5. NaphCare responded that he had just been seen by a provider who did not order x-rays. *Id.* The next day Brown requested an x-ray or MRI and asked for a neck pillow. *Id.* NaphCare denied this request. *Id.* On May 17, Brown renewed his request for an x-ray or MRI. *Id.* NaphCare responded by referring Brown to its prior response. *Id.* On May 19, Brown again complained of pain in his shoulders and requested an x-ray or MRI. *Id.* NaphCare repeated its response that he had been recently seen and no x-ray was ordered, and it directed him to the canteen to purchase Ibuprofen. *Id.*

On May 26, Brown filed a grievance stating that a medical provider had told him he had a torn rotator cuff, and he had submitted multiple kites to medical but they refused to order x-rays to determine the damage and proper treatment. *Id.* NaphCare responded that Brown had been diagnosed with a strain, not a torn rotator cuff, and that a strain could take from eight to twelve weeks to heal. *Id.* at 6. Brown submitted multiple requests in late May and early June about the pain, to which NaphCare responded by ordering him Naproxen. *Id.*

On June 17, Brown was seen by Dr. Raymond Mondora, who ordered an x-ray on his left shoulder. *Id.* The x-ray was taken the same day and showed no significant bony abnormalities. *Id.* Three days later, Brown requested Tylenol plus something stronger for his shoulder pain. *Id.*

On June 22, Brown was seen by another physician's assistant. *Id.* at 7. He was again given Ibuprofen. *Id.* About a week later, Brown submitted another kite because he had not received his x-ray results and he needed to renew his pain medication. *Id.* On July 10, Brown submitted a kite requesting Motrin for his shoulder. *Id.* On July 29, he submitted a kite and filed a grievance, complaining that his shoulder had been in pain for months, but NaphCare's response was to tell him to buy Motrin from the canteen. *Id.*

On August 4, Brown was seen by another physician's assistant who determined no x-ray or MRI was warranted. *Id.* at 8. Brown was directed to continue stretching exercises and follow up. *Id.* The next day, Brown filed a grievance that the physician's assistant was not interested in helping him and he needed assistance with his shoulder because something was "really wrong" with it. *Id.* On August 10, Brown submitted a kite that he had a cyst on his right shoulder and his left shoulder was in great pain. *Id.* NaphCare responded that Ibuprofen was ordered, that Brown should continue the stretching exercises, and that an appointment with a medical provider was scheduled. *Id.*

On August 19, Brown was seen by Dr. James Anthony. *Id.* Dr. Anthony's initial assessment was that Brown had inflammation of the rotator cuff tendon and a right AC joint sprain. *Id.* Dr. Anthony's treatment plan suggested prednisone, stretching exercises, and a follow-up in two weeks if needed. *Id.*

On August 20, Brown submitted a kite stating he needed Motrin, that he was in pain, and that the doctor had told him he had a dislocated right shoulder and torn ligaments in his left shoulder. *Id.* at 9. NaphCare responded by stating Tylenol was ordered. *Id.*

On August 23, Brown filed a grievance stating the doctor told him he had a dislocated right shoulder and needed an MRI on his left shoulder. *Id.* NaphCare responded that a right shoulder x-ray had been ordered and he would be scheduled for an appointment. *Id.* That x-ray was performed on August 28, 2015. *Id.* Brown filed his original complaint in this case that same day. ECF No. 1-1.

In late August and early September, Brown submitted numerous kites stating his shoulder was in excruciating pain and he needed stronger medication. ECF No. 127-1 at 9. Brown saw Dr. Anthony again on September 4. *Id.* at 10. Dr. Anthony assessed AC joint subluxation and recommended Brown see an orthopedic provider "when outside of CCDC," and that he limit activity. *Id.*

Brown thereafter continued complaining of pain. *Id.* at 10-11. He was seen by a nurse on September 16, who noted an "obvious bulge" on Brown's right shoulder. *Id.* at 11. The next day, Brown filed a grievance stating his shoulder had been getting worse but he was intentionally being denied care. *Id.* NaphCare responded that Brown had just been seen by a nurse, he should take Motrin for pain, and to submit another kite if needed. *Id.* Brown thereafter filed several more kites complaining of shoulder pain and swelling, and that it was getting worse but he was not being treated. *Id.* at 11-12. NaphCare responded by claiming his x-ray results were normal, apparently ignoring Dr. Anthony's opinion of AC subluxation. *Id.* at 12.

Dr. Anthony saw Brown again on October 1. *Id.* Dr. Anthony concluded the right shoulder AC joint was tender with "obvious deformity." *Id.* Dr. Anthony requested an MRI of Brown's right shoulder. *Id.* at 13. A few days later, Dr. Anthony indicated Brown probably had a rotator cuff injury. *Id.* On October 7, Brown filed a grievance because he had not received an MRI and his pain was worsening. *Id.* NaphCare denied the MRI. *Id.*

The MRI was denied by Dr. Sylvie Stacy, NaphCare's corporate medical director. *Id.* Dr. Stacy stated that surgical repair of an AC separation or rotator cuff tear would be elective at that point in time, and an MRI was unlikely to change the need for ongoing conservative treatment. *Id.* at 14. Thereafter, Brown continued to file kites and grievances about his pain and NaphCare continued to respond with Tylenol, Ibuprofen, or Naproxen. *Id.* at 15-16.

Dr. Anthony saw Brown again on December 14, at which time he assessed right AC subluxation with probable bilateral rotator cuff tendonopathy. *Id.* at 16. Dr. Anthony recommended Ibuprofen and noted that "prior requests for MRI were denied." *Id.* According to

Dr. Anthony, there was not much more he could do for Brown without an MRI. *Id.* at 23. Brown thereafter continued to complain about pain in his shoulder. *Id.* at 16-18.

Brown alleges NaphCare has a policy and practice of denying detainees off-site care because it is more expensive. *Id.* at 19. Brown alleges NaphCare's own website stated (until recently) that onsite care is preferred because it is safer, less disruptive, and more cost-effective. *Id.* X-rays are offered onsite, but an MRI would require transporting Brown to an off-site facility. *Id.* Brown alleges that it costs more for NaphCare to provide off-site care because NaphCare must arrange for the detainee's transport and must pay for the off-site care. *Id.* Additionally, MRIs are more expensive than x-rays. *Id.*

Requests for off-site care are reviewed by NaphCare's utilization management team, which ensures resources are allocated in a cost-effective manner. *Id.* NaphCare allegedly touts the fact that it keeps costs down by minimizing off-site care. *Id.* at 20. The amended complaint alleges that Dr. Anthony has stated that off-site care requests were often denied because NaphCare did not want to pay for it. *Id.*

Brown alleges Dr. Stacy denied his MRI not for a medical reason, but pursuant to NaphCare's policy of denying off-site care for costly procedures like MRIs. *Id.* at 20-21. Brown alleges that an MRI would have assisted in diagnosing his condition and thus would have informed an appropriate treatment plan. *Id.* He alleges NaphCare and Dr. Stacy knew this and were deliberately indifferent to his injuries and pain. *Id.* at 21.

Brown also alleges NaphCare has a custom or practice of denying and delaying medical care, as demonstrated by him having to wait sometimes over a month to see a provider despite repeated reports of extreme and worsening pain. *Id.* He thus alleges NaphCare was deliberately indifferent to his serious medical condition by ignoring his many requests for treatment. *Id.*

He also alleges Kendra Schultz, NaphCare's Health Services Administrator at CCDC, was deliberately indifferent to Brown's serious medical needs because she failed to ensure NaphCare followed its own policies, which usually require inmates be seen within ten days. *Id.* at 2-3, 22. Yet Brown was not seen by a doctor for his shoulder pain in April 2015 until May 11, after he

suffered another injury through the alleged use-of-force incident. *Id.* Brown alleges he was not seen again for another month despite repeated reports of pain. *Id.* And he alleges he was not seen after his June 22 visit until August 4 despite his repeated complaints. *Id.* at 23. Finally, he alleges that from the time he saw Dr. Anthony in December 2015 until his release from CCDC in early 2017, he was not seen by anyone despite his repeated reports of extreme pain. *Id.* Brown alleges Schultz knew about his complaints because she received and responded to grievances related to health care at CCDC, including Brown's many grievances. *Id.* at 25 n.5.

Brown alleges that due to the nature of a rotator cuff injury, it needs to be fixed within weeks of the injury. *Id.* at 24. Thus, NaphCare's failure to have him seen by a doctor for over five weeks after the use-of-force incident and eleven weeks past the altercation with the other inmate, deprived Brown of an opportunity to obtain treatment during the critical early weeks following the injury. *Id.* Additionally, Brown alleges that an MRI would have assisted in determining what was causing his pain. *Id.* He also alleges NaphCare repeatedly provided him only limited medication that was not sufficient to address his pain even though he repeatedly submitted kites and grievances describing his pain as excruciating and worsening. *Id.*

Based on these allegations, Brown asserts a claim under 42 U.S.C. § 1983 against NaphCare, Dr. Stacy, and Schultz for a violation of the Fourteenth Amendment for deliberate indifference to his serious medical needs as a pretrial detainee.[2] *Id.* at 25. He also asserts a state law negligence claim against these same defendants. *Id.* at 26.

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). NaphCare does not dispute that as the medical provider at CCDC, it acted under color of law, so the question is whether Brown has adequately alleged that NaphCare deprived him of a constitutional right.

---

[2] The parties do not address whether amendment should be allowed as to the individual defendants, so I do not address them separately.

| | |
|---|---|
|1| Brown alleges the constitutional violation at issue is the denial of adequate medical care to |
|2| a pretrial detainee. Because Brown was a pretrial detainee, his constitutional rights derive from |
|3| the Fourteenth Amendment's due process clause rather than the Eighth Amendment's prohibition |
|4| on cruel and unusual punishment. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. |
|5| 2002). Pretrial detainees are entitled to at least the same duty the Eighth Amendment imposes: |
|6| "persons in custody ha[ve] the established right to not have officials remain deliberately |
|7| indifferent to their serious medical needs." *Id.* (quotation omitted). "Prison officials are |
|8| deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or |
|9| intentionally interfere with medical treatment." *Lolli v. Cty. of Orange*, 351 F.3d 410, 419 (9th |
|10| Cir. 2003) (quotation omitted). |
|11| However, a government entity cannot be held liable under § 1983 based on a respondeat |
|12| superior theory of liability. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012). |
|13| Rather, a government entity may be held liable under § 1983 if the entity's policy, practice, or |
|14| custom was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, |
|15| 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 |
|16| U.S. 658, 694 (1978)). This principle also applies to a private entity acting under color of state |
|17| law. *Tsao*, 698 F.3d at 1139. |
|18| One means of establishing entity liability under § 1983 is showing that the entity "itself |
|19| violated someone's rights or directed its employee to do so." *Gibson*, 290 F.3d at 1185. Under |
|20| this theory of entity liability, Brown must allege facts showing NaphCare had a policy or custom |
|21| that was deliberately indifferent to his medical needs, and that policy led to the deprivation of his |
|22| constitutional right to adequate medical care as a pretrial detainee. *See Castro v. Cty. of Los |
|23| Angeles*, 833 F.3d 1060, 1073-74 (9th Cir. 2016) (en banc). |
|24| Viewing the allegations and reasonable inferences in the light most favorable to Brown, |
|25| he adequately alleges a § 1983 claim against NaphCare. Brown alleges NaphCare has a policy of |
|26| denying off-site care as a cost-control measure. Brown alleges that policy poses a risk to inmates |
|27| such as himself who suffer an injury that is not adequately diagnosed through x-rays or treated by |
|28| |

onsite care but requires off-site and expensive procedures, like an MRI, to diagnose and develop a proper treatment plan. Brown alleges that in conformity with this policy, Dr. Anthony's order for an MRI was denied not because an MRI would not help to diagnose Brown's shoulder issues, but because it was too expensive. As to whether the policy was deliberately indifferent to a substantial risk of serious harm, a risk may be "so obvious that ignoring it amounted to deliberate indifference." *Tsao*, 698 F.3d at 1145. Because a detainee's access to adequate medical care is an established constitutional right, a policy of making healthcare decisions based on costs rather than on medical needs may amount to deliberate indifference to those detainees' rights. *See Peralta v. Dillard*, 744 F.3d 1076, 1084 (9th Cir. 2014) (en banc) ("A chronic shortage of resources may well amount to a policy or practice for which monetary relief may be available under *Monell*.");[3] *Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006) (holding there was an issue of fact regarding deliberate indifference if the prison doctor "decided not to request an orthopedic consultation merely because [the prisoner] could not go back to . . . a non-contracted facility" because that would be "akin to cases finding deliberate indifference where prison officials and doctors deliberately ignore[ ] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner" (quotation omitted)).

Additionally, Brown alleges NaphCare has a custom or practice of deliberately delaying or denying treatment. Brown alleges numerous instances where treatment was delayed or denied, including his initial complaints of pain when he was first injured in the two incidents, as well as numerous complaints of excruciating and worsening pain that were met only with responses to take Tylenol or Motrin. He also alleges that although NaphCare has an official policy that detainees will be seen within ten days, he often was not seen within ten days, thus showing NaphCare has a custom of delaying treatment that is contrary to its officially stated policy.

---

[3] The *Peralta* majority held that a lack of resources may be a relevant consideration in determining whether a particular individual defendant who had no control over budgeting decisions was deliberately indifferent to a detainee's serious medical needs. 744 F.3d at 1082. That analysis would not apply to NaphCare.

Brown has adequately alleged a pattern of behavior over many months to allege a custom or practice of delaying or denying care.

NaphCare takes issue with Brown's characterization of its treatment of him, why the MRI was denied, and the significance of NaphCare's budget-conscious decision-making. But the question at this stage is not whether Brown will prevail on his claims but whether amendment would be futile. It would not be, so I grant the motion to amend.

### C. Request to Reopen Discovery

As part of his motion to amend, Brown requests to reopen discovery. I defer the resolution of discovery disputes to the Magistrate Judge. However, any request to reopen discovery must be made by April 20, 2018.

### III. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Charon Brown's motion for reconsideration **(ECF No. 122) is GRANTED**. My order dismissing defendant NaphCare, Inc. **(ECF No. 22) is VACATED**.

IT IS FURTHER ORDERED that plaintiff Charon Brown's motion to amend **(ECF No. 127) is GRANTED**. Pursuant to Local Rule 15-1(b), plaintiff Charon Brown shall file and serve the amended complaint.

IT IS FURTHER ORDERED that any motion to reopen discovery shall be filed by April 20, 2018.

DATED this 23rd day of March, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE